UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARK W. DOBRONSKI,**<br>Plaintiff,<br>**v.**<br><br>**ASCENDANT HOLIDAYS, LLC, et al.,**<br>Defendants. | **2:24-CV-12379-TGB-APP**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION (ECF NO. 84)**<br><br>**AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 66)**<br><br>**AND DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE OUT OF TIME RESPONSE TO DEFENDANTS' OBJECTIONS (ECF NO. 89)** |

Plaintiff Mark W. Dobronski ("Plaintiff") brings this case against Ascendant Holidays, LLC, Holidays Lounge, LLC, Holidays Network Group, LLC, and Jorge Manuel Bravo Cruz (collectively, "Defendants") for violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, the Michigan Home Solicitation Sales Act

("MHSSA"), M.C.L. §§ 445.111–445.117, the Florida Telemarketing Sales Act ("FTSA"), Fla. Stat. § 501.059, and the Michigan Consumer Protection Act ("MCPA"), M.C.L. §§ 445.901–445.922. Defendants have filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 66. The Honorable Magistrate Judge Anthony P. Patti issued a Report and Recommendation, recommending that Defendants' Motion to Dismiss be granted in part. ECF No. 84. Plaintiff and Defendants have timely filed Objections to the Report and Recommendation. ECF Nos. 85, 87. Plaintiff also filed a Motion for Leave to File Out of Time Response to Defendants' Objections. ECF No. 89. Upon thorough review of Judge Patti's well-researched Report and Recommendation, the pleadings, and the case law, the Court will **GRANT IN PART** Defendants' Motion to Dismiss and **ADOPT IN PART** and **DECLINE TO ADOPT IN PART** the Report and Recommendation.

## I. BACKGROUND

### A. Factual Background

The Court recounts the allegations relevant to Defendants' Motion to Dismiss below.

Defendants Ascendant Holidays, LLC ("Ascendant"), Holidays Lounge, LLC ("Lounge"), and Holidays Network Group, LLC ("Network") offer free vacations to consumers to induce them to buy into a vacation time share program. ECF No. 56 ¶¶ 74–76. To maximize the number of consumers it contacts, the Defendants, either through their own staff or

with third-party telemarketers, "initiate telephone calls *en masse* using automated telephone dialing systems, which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, to solicit consumers." *Id.*, ¶ 67 (emphasis in original).

Plaintiff's cellular telephone number is "listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004 and at all times subsequent thereto and relevant hereto." *Id.*, ¶ 35.

The First Amended Complaint alleges that he received 22 phone calls from Defendants using an automatic telephone dialing system ("ATDS"). *Id.*, ¶ 238.

During Calls 1–5, the callers identified themselves as representatives of "Booking Dot Com." *Id.*, ¶¶ 81–103. In each of those calls, the caller told Plaintiff that he was "qualified for a free vacation holiday for two." *Id.* On the fifth call, Plaintiff was transferred to "Kevin," the "Senior Manager." *Id.*, ¶ 105. That same "Kevin" appeared in Call 6, during which he scheduled an appointment for Plaintiff to attend a presentation at "9650 Universal Boulevard, Unit 115, Orlando, Florida 32819." *Id.*, ¶¶ 110–11. Plaintiff then received an email from "Travel Incentives" confirming the address and time for the appointment. *Id.*, ¶ 111.

During Call 7, Plaintiff received confirmation of that first appointment. *Id.*, ¶ 116. During Calls 8 and 9, representatives, seemingly of Ascendant and Network, rescheduled Plaintiff for a new appointment. *Id.*, ¶¶ 120–25. After Call 9, Plaintiff flew to Florida and drove to 9650 Universal Boulevard, Orlando, Florida 32819. *Id.*, ¶ 129. While there, Plaintiff observed the names "Ascendant Holidays" and "Orlando Holidays Group" on the door, and Plaintiff received an "Acknowledgement, Consent, and Release of Liability Waiver" form that he was asked to sign, which named "Ascendant Holidays." *Id.* During Call 10, Plaintiff connected with a representative of Ascendant. *Id.*, ¶ 133. Calls 11 and 12 feature representatives of Ascendant with some connection to Lounge. *Id.*, ¶¶ 142–63. Calls 13 and 14 don't reference any Defendants or notable entities since those calls terminated shortly after Plaintiff answered. *Id.*, ¶¶ 167–72. Calls 15 through 19 feature callers who claim to be representatives of either Delta Airlines, "Holidays Travel," or who failed to provide any company name. *Id.*, ¶¶ 175–204. Several of these calls involve confirmation emails from Travel Incentives. *Id.*, ¶¶ 191, 196, 200.

During Call 20, "Alex," who claimed he was calling on behalf of Delta Airlines, connected Plaintiff to "Harry," who stated that his company was the "Holidays Network Group." *Id.*, ¶¶ 207–15. "Harry" also stated that Defendant Bravo "was his boss," and that Ascendant "was an affiliate of Holidays Travel," a different company that "Harry"

referenced earlier in the call. *Id.*, ¶¶ 211–16. Calls 21 and 22 feature that same "Harry." *Id.*, ¶¶ 217–27.

Throughout the various communications, Plaintiff consistently received confirmation emails from "Travel Incentives." *Id.*, ¶¶ 111, 116, 121, 144, 147, 162, 196. Whenever Plaintiff received an address to attend an appointment, it was consistently "9650 Universal Boulevard, Orlando, Florida," *Id.*, ¶¶ 110, 116, 121, 133, 141, 145, 147, 159, 162, 190, 196, 211, 222, though the suite number often changed, and at times no ZIP code was included. At multiple points during these calls, Plaintiff expressed to these callers that he wanted the calls to stop. *Id.*, ¶¶ 84, 94, 129, 146, 165.

**B. Procedural Background**

On January 15, 2026, Defendants Ascendant, Network, Lounge, and Bravo filed a Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 66. Defendants provided eight reasons for dismissing Plaintiff's Complaint:

> (1) Plaintiff does not have Article III standing because he has not alleged facts showing he suffered a concrete harm for alleged facial violations of the TCPA and state law claims, and Plaintiff's telephone is used for business; (2) Plaintiff violates well-established pleading standards by engaging in improper group pleading; (3) Plaintiff fails to allege facts sufficient to satisfy the plausibility standard; (4) Plaintiff fails to establish Movants' direct or vicarious liability with respect to the calls as there are no allegations that Movants physically placed the calls or had control over the callers who did, or even who the callers were, how they were connected to any or all of the four

> Defendants, or how, if at all, the calls were connected to each other; (5) Plaintiff fails to, or cannot, properly plead required elements of his TCPA claims; (6) Movants cannot be held vicariously liable for a violation of the MHSSA; (7) Plaintiff fails to satisfy the heightened pleading standards for his MCPA claim, which sounds in fraud; and (8) Movants cannot be liable under the FTSA as free vacations do not qualify as "consumer goods and services."

ECF No. 66, PageID.758–59.

Plaintiff filed his Response on February 4, 2026. ECF No. 70. On August 5, 2026, Judge Patti filed a Report and Recommendation, recommending that the Court grant in part Defendants' Motion to Dismiss. ECF No. 84.

Plaintiff filed Objections to Judge Patti's Report and Recommendation on August 5, 2026, ECF No. 85, and Defendants filed their Objections on August 28, 2026, ECF No. 86, with their Response to Plaintiff's Objections that day, ECF No. 88. Plaintiff has since filed a Motion for Leave to File Out of Time Response to Defendants' Objections. ECF No. 89.

## II. STANDARD OF REVIEW

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

"The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 452 (N.D. Ohio 2012) (quoting *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Failure to object waives further review of a district court's adoption of the report and recommendation. *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed." The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). And the filing of vague, general, or conclusory objections is insufficient to preserve issues for further review. *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001).

This Court must review de novo (as if it were considering the issues for the first time) the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," the Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true," *Keys v.*

*Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), and determine whether it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Ready v. Ford Motor Co.*, No. 87-5173, 1988 WL 41153, at *4 (6th Cir. 1988). Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" to support their grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Additionally, a court "need not accept as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citation omitted).

## III. DISCUSSION

Defendants raise eight specific objections to Judge Patti's Report and Recommendation, ECF No. 87, and Plaintiff raises four, ECF No. 85. The Court addresses each objection in turn.

### A. Defendants' Objections

#### *1. Group Pleading [Objection 1]*

Defendants argue that Plaintiff's Complaint should be dismissed based on Judge Patti's finding that "Plaintiff's causes of action are improperly group-pleaded." ECF No. 87, PageID.1085 (quoting ECF No. 84, PageID.1049–50). The Court disagrees with that assessment. Although Defendants are correct that Plaintiff's counts do not explicitly refer to each Defendant, Plaintiff's allegations support an inference that each corporate Defendant is liable for any violative calls.[1]

"The pleading standard articulated in Rule 8 is a low standard. A plaintiff need only give the defendant 'fair notice' of the plaintiff's claims." *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 788 (6th Cir. 2006). The permissibility of group pleading is often dependent on the facts and claims at issue. *See Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 934 (S.D. Ohio 2023) (collecting cases). A plaintiff can sufficiently plead allegations to give notice to defendants even in situations where they have "made allegations that multiple [d]efendants

[1] For reasons to be discussed when addressing Plaintiff's Objections, the Complaint does not provide sufficient notice to Defendant Bravo.

have engaged in the same conduct." *Hale v. Enerco Grp., Inc.*, No. 1:10 CV 00867-DAP, 2011 WL 49545, at *4 (N.D. Ohio Jan. 5, 2011); *see also Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 835 (N.D. Ohio 2021) ("[C]ollecting the three under a defined term then claiming all three are liable for the same misconduct is, at the pleading stage, sufficient to give each of them notice of the claims alleged against them.").

Judge Patti found that Plaintiff has sufficiently pleaded "some type of connection between the corporate Movants and the various phone calls." ECF No. 84, PageID.1046. Defendants argue that this finding "does not remediate Plaintiff's pleading deficiency." ECF No. 87, PageID.1085. The Court finds that Plaintiff's allegations actually accomplish more than merely suggesting some connection between the calls Plaintiff received and each of the corporate Defendants.

Judge Patti highlighted that during various calls, Ascendant, Network, and Lounge are referenced in the communications that Plaintiff received. ECF No. 84, PageID.1045–46. While each corporate Defendant is sparingly mentioned through the 22 calls Plaintiff listed, ECF No. 84, PageID.1045–46, the allegations, taken as a whole, connect them more than Defendants are willing to admit. Plaintiff identifies an entity called "Travel Incentives" associated with the travel programs in at least seven of the 22 calls. ECF No. 56, ¶¶ 114–200. In those seven calls, the Complaint ties each separate corporate Defendant to "Travel Incentives," which is responsible for providing Plaintiff with confirmation

emails for each of his scheduled appointments. *See id.*, ¶¶ 120–21 (indicating that Plaintiff received an email from Travel Incentives as his call with a representative from "Holidays Network" ended); *id.*, ¶¶ 145–47 (indicating that Plaintiff received an email from Travel Incentives right before his call with a representative from "Ascendant Holiday" ended); *id.*, ¶¶ 160–62 (indicating that Plaintiff received an email from Travel Incentives that referenced "Holidays Lounge" after speaking with a representative of Ascendant Holidays).

Thus, Plaintiff identified a plausible connection between almost every caller and either a corporate Defendant or Travel Incentives. The two main exceptions are Calls 13 and 14, where the caller hung up shortly after Plaintiff answered. *Id.*, ¶¶ 168–72. Even the first five calls can plausibly be connected back to Defendants because "Kevin," the senior manager, sent Plaintiff an email through Travel Incentives even though he originally stated that he was the senior manager for "Sarah" from "Booking Dot Com." *Id.*, ¶¶ 101–07. Since the first five calls all involved the same script of Plaintiff qualifying for a free vacation for two, *Id.*, ¶¶ 81–103, when viewed in the light most favorable to the Plaintiff, those calls also implicate the corporate Defendants.

The 20 calls (excluding Calls 13 and 14), on their own, plausibly suggest that each corporate Defendant participates in this telemarketing strategy to call consumers, promising them this "free vacation." *See id.*, ¶¶ 103 (implicating "Kevin" who later identified himself with Network

and provided Ascendant's address), 156 (implicating "Ellen" who identified herself with Ascendant and sent an email implicating Lounge), 178 (implicating "Alex" whose senior manager was "Harry," who later affiliated himself with Network and Ascendant).

Plaintiff further alleged that Defendants use "numerous names interchangeably" deliberately to "cause confusion so as to allow the Defendants to evade liability." *Id.*, ¶ 228. The Complaint provides factual support for this alleged scheme. For instance, in Call 20, "Alex" called "on behalf of Delta Airlines" even though his senior manager, "Harry," claimed that "Holidays Network Group" was his company. *Id.*, ¶¶ 207–14. And when Plaintiff asked a representative from Ascendant Holidays why previous telemarketers claimed they were from "Booking Dot Com," she claimed that "Booking Dot Com is one of the sponsors" and "Ascendant Holiday is just cooperating with the sponsors." *Id.*, ¶ 145. Viewing these calls in the light most favorable to the Plaintiff, the Court finds that Plaintiff has sufficiently alleged that the corporate Defendants had their agents intentionally obfuscate their roles in a manner that would avoid liability.

Beyond the scheme of deception, Plaintiff sufficiently alleged that the corporate Defendants are connected. In the previously mentioned Call 20, "Harry" seemed to imply that Network and Ascendant are affiliates. *Id.*, ¶¶ 214–16. In Call 11, Plaintiff spoke with a representative of Ascendant but concluded the call with an email from

"HolidaysLounge." *Id.*, ¶¶ 145–47. In Call 9, the caller seemed to imply that at the very least "Holidays Network" and "Ascendant" shared the same office. *Id.*, ¶ 125. And the Complaint alleged that each corporate Defendant is tied to this same Orlando property at 9650 Universal Boulevard, Orlando, Florida 32819. *See id.*, ¶¶ 145–47 (showing Plaintiff receiving an email with the "HolidaysLounge" logo confirming his appointment at "9650 Universal Boulevard, Suite 120, Orlando, FL" after speaking with representative of Ascendant); *Id.*, ¶¶ 211–14 (showing Plaintiff scheduling an appointment at "9650 Universal Boulevard, Suite 121, Orlando, Florida 32819" with an employee of "Holidays Network Group"); *id.*, ¶ 233 (showing government records identifying Ascendant Holidays, LLC as the owner of Suites 115 and 121 at the same address); *id.*, ¶ 133 (indicating that caller told Plaintiff that "Ascendant Holiday" was located in Suite 120 at the same address). In sum, Plaintiff has sufficiently alleged that the corporate Defendants are members of the same concerted scheme. Because Plaintiff pleads that all Defendants are responsible for these calls by engaging in concerted action with one another, his Complaint does not contain improper group pleadings.

Even if this Court agrees with Defendants that Plaintiff's corporate veil arguments are conclusory, ECF No. 87, PageID.1086, Plaintiff has still sufficiently alleged concerted action. *See Igo*, 652 F. Supp. 3d at 935 (rejecting defendants' group pleading argument when they "collectively have responsibilities" over plaintiff's life insurance plan); *Gold Crest*, 525

F. Supp. at 835 (no improper group pleadings where the complaint identifies each defendant and "alleges relationships between the three," such as sharing the same business address, being in the same business, and sharing a website). Even if the corporate Defendants are not all the same, the Complaint sufficiently alleged that Defendants have a "common purpose," ECF No. 56, ¶ 232, one that implicates each of them in these calls. Of course, these allegations may not be borne out by discovery, but until then, Plaintiff has sufficiently alleged that this scheme exists.

Accordingly, Defendants' first objection is **OVERRULED**.

*2. Agency Issue [Objection 2]*

Defendants argue that Plaintiff failed to "plausibly plead facts to show an agency relationship between any of the Defendants and the alleged callers." But Defendants misconstrue the Report and Recommendation. Judge Patti stated that the agency discussion in the *general allegations section* was generic and conclusory. ECF No. 84, PageID.1042. That has no bearing on whether Plaintiff has sufficiently alleged an agency relationship between the callers and Defendants.

"Judges in this District and elsewhere have found that, at the pleading stage, it is sufficient that a caller self-identify as a representative of the defendant to infer that the defendant is responsible for the calls." *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *4 (E.D. Mich. Aug. 21, 2025), *motion to certify appeal denied*,

No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025). The Court finds that Plaintiff has sufficiently alleged an agency relationship based on several callers identifying themselves with one of the corporate Defendants and Plaintiff's broader allegations of Defendants' attempt to confuse consumers and evade detection.

Accordingly, Defendants' second objection is **OVERRULED**.

*3. Each Defendant's Liability for All 22 Calls [Objection 3]*

Defendants' third objection closely follows their first objection for improper group pleading. They argue that Judge Patti's Report and Recommendation seems to sparingly indicate individual liability for any of them for any particular call, yet it still does not dismiss on that basis. ECF No. 87, PageID.1091. The Court does not find Defendants' argument compelling.

As stated previously, Plaintiff alleged that Defendants are working in concert to entice consumers by promising free vacations. ECF No. 56 ¶ 76. While promising free vacations, Defendants do not actually intend to provide them, but instead "us[e] aggressive tactics and exploit[] psychological triggers, to compel the consumer regarding buying into a vacation time share program." *Id.*, ¶ 76. If the Court accepts these allegations as true, that Defendants are working in concert to pressure consumers into purchasing time shares, then each corporate Defendant would benefit from the scheme. At the very least, based on Plaintiff's allegations discussed above, the Court can construe each corporate

Defendant's conduct as ratifying the other's behavior. *See Dobronski v. Tobias & Assocs.*, Inc., 769 F. Supp. 3d 681, 702 (E.D. Mich. 2025) (citation omitted) ("[R]atification can occur when a principal knew about the behavior but "nonetheless sent applications or policies."). Requiring more from Plaintiff at this stage would "not conform with the motion to dismiss standard." *Id.* at 693. As Judge Levy precisely stated:

> After discovery is conducted, the evidence may demonstrate that Defendants are correct, and these [22] calls have no connection to them. On the other hand, there may be evidence that these [22] calls were placed on behalf of Defendants. At this point, the Court declines to dismiss allegations regarding Calls 1–[22].[2]

*Id.* at 694. Plaintiff has met his burden at the pleading stage, but the corporate Defendants may yet use discovery to dispute their veracity.

Defendants' reliance on *In re E. I. du Pont de Nemours and Company C-8 Personal Injury Litig.*, 87 F.4th (6th Cir. 2023) is misplaced. There, the plaintiff alleged that the ten defendants were each responsible for manufacturing five particular PFAS compounds that were present in his blood. *Id.* at 320. That plaintiff simply lumped all ten defendants together and held them responsible because they all manufactured the relevant chemicals. *Id.* Plaintiff does not employ the same strategy here. Here, Plaintiff alleged that the three companies each

[2] Plaintiff has not sufficiently alleged that Defendants are liable for Calls 13 and 14 since there is no identifying information whatsoever connected to them.

played a role in this telemarketing strategy and that they did so as part of a common scheme. *See* ECF No. 56, ¶¶ 64–235.

Because each Defendant may be held liable for its role in this scheme, including all calls except 13 and 14, Defendants' third objection is **OVERRULED**.

*4. Article III Standing [Objection 4]*

Defendants again rely on *In re E. I. du Pont*, this time to argue that Plaintiff lacks Article III standing to bring his Complaint. ECF No. 87, PageID.1092–93. Defendants argue that Plaintiff needs to show that his injury is traceable to an act of each Defendant. *Id.* at PageID.1092. The Court finds that Plaintiff has sufficiently alleged that he has standing to bring this case.

The Court is not convinced that Plaintiff, at the pleading stage, had to do any more than "attribute specific actions to . . . discrete Defendants." *Rhodes v. Williamson*, No. 6:25-CV-00228-GFVT, 2026 WL 1984111, at *9 (E.D. Ky. July 9, 2026); *Revis v. Meldrum*, 489 F.3d 273 (6th Cir. 2007) ("[T]he issue of the private-party defendants' role in the alleged conspiracy could not ordinarily be resolved at the pleading stage . . . ."); *see also Bennett v. Spear*, 520 U.S. 154, 170–71 (1997) (stating that showing traceability at the pleading stage is a "relatively modest" burden); *Hamm v. Acadia Healthcare Co.*, No. 3:21-CV-00550, 2022 WL 3129033, at *6 (M.D. Tenn. Aug. 4, 2022) (declining to dismiss claims against one defendant because specific facts were alleged

alongside general allegations related to the defendants collectively). Once Plaintiff specifically implicated each Defendant through his allegations, he met the traceability requirement for Article III standing.

To establish traceability, a plaintiff must show “a fairly traceable connection between plaintiff’s injury and the complained of conduct of the defendant.” *Buchholz v. Tanick*, 946 F.3d 855, 866 (6th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Env’t*, 523 U.S. 83, 103 (1998)). “[T]he standard for establishing traceability for standing purposes is less demanding than the standard for proving tort causation.” *Buchholz*, 946 F.3d at 866 (citation omitted). As discussed in the previous section, Plaintiff did exactly that. Plaintiff specifically alleged that the corporate Defendants each played a role in this scheme. *See* ECF No. 56, ¶¶ 103 (implicating “Kevin” who later identified himself with Network and provided Ascendant’s address), 156 (implicating “Ellen” who identified herself with Ascendant and sent an email implicating Lounge), 178 (implicating “Alex” whose senior manager was “Harry,” who later affiliated himself with Network and Ascendant). According to Plaintiff, those actions by Defendants led to Plaintiff suffering “an injury in the form of a nuisance and annoyance” from each call. *Id.*, ¶ 61. Thus, viewed in the light most favorable to Plaintiff, his Complaint sufficiently attributes conduct to each Defendant.

Accordingly, Defendants’ fourth objection is **OVERRULED**.

*5. Counts I & II [Objection 5]*

Defendants argue that Counts I and II should be dismissed because Plaintiff has not plausibly alleged that Defendants used an automated telephone dialing system. ECF No. 87, PageID.1093. The Court disagrees.

As stated previously, Plaintiff sufficiently alleged that the callers in his Complaint are connected to the corporate Defendants. In Call 11, a senior manager specifically identifies herself as part of "Ascendant Holiday," ECF No. 56, ¶ 145. She then admits that "they use an automatic telephone dialing system to dial 'hundreds of telephone numbers' that are on their lists." *Id.*, ¶ 146.

"Though [the plaintiff] was not required to plead the technical specifications of the system that was used to call him, he needed to at least indicate what about the calls led him to infer that [the defendant] was using an automatic telephone dialing system." *Fluker v. Ally Fin., Inc.*, No. 24-1023, 2025 WL 1827747, at *3 (6th Cir. July 2, 2025). Plaintiff did precisely that in his Complaint. He did not simply state that the callers used an automatic telephone dialing system. He stated that one of the callers said so herself, which led him to believe that it must be the case that they did. ECF No. 56, ¶ 146. In Call 10, Plaintiff also alleged that he heard a "boink" followed by a recorded message and then a live caller. *Id.*, ¶ 133; *see CHW Grp.*, 2025 WL 2426370, at *4 ("Judges in this District also have held, including post-*Duguid*, that 'multi-second delays

and/or a boink or clicking sound before a live telemarketer comes on the line,' . . . are indicia that make an ATDS claim plausible.") (cleaned up). The admission in Call 11 alongside the sound in Call 10 supports a reasonable and plausible inference of an automated dialing or an automated telemarketing system.

Accordingly, Defendants' fifth objection is **OVERRULED**.

*6. Independent Causes of Action Under 47 C.F.R. § 64.1200(d) [Objection 6]*

Defendants argue that the Report and Recommendation erred because it did not dismiss Counts VI–X as duplicative. ECF No. 87, PageID.1095. But Defendants "seem[] to overlook a fundamental tenet of civil litigation: plaintiffs may plead multiple theories of recovery in a case, even if recovery is only permitted under one. *See* Fed. R. Civ. P. 8(d)." *CHW Grp., Inc.*, 2025 WL 2426370, at *7. Thus, Plaintiff is entitled to discovery to determine which theory, if any, can justify recovery.

Accordingly, Defendants' sixth objection is **OVERRULED**.

*7. Residential Use Issue [Objection 7]*

Defendants argue that the Report and Recommendation erred by finding that Plaintiff established that his number is used for residential purposes and that Defendants conceded this point in their reply. ECF No. 87, PageID.1097. Even if the Defendants did not actually concede this point through their briefing, the Court finds that Plaintiff sufficiently alleged that his number is used for residential purposes.

District courts routinely presume that individuals who put their number on the National Do Not Call Registry are residential telephone subscribers. *CHW Grp.*, 2025 WL 2426370, at *6; *Lirones v. Leaf Home Water Sols.*, LLC, No. 5:23-CV-02087, 2024 WL 4198134, at *7 (N.D. Ohio Sept. 16, 2024); *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 (N.D. Ohio Sept. 20, 2023); *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023).

Plaintiff alleged several times in his Complaint that his number is on the National Do Not Call Registry. ECF No. 56, ¶¶ 35, 36, 129, 146, 239, 248. While Defendants present the argument that Plaintiff is in the business of bringing these kinds of cases, so therefore the number he is using should be considered a business number rather than a residential number, ECF No. 66, PageID.769, that is merely a supposition on their part. It is unknown whether Plaintiff brings these cases as a hobby, vocation, or a personal crusade, any of which can be conducted from a personal residential number. It is a factual assertion derived from Plaintiff's personal knowledge and therefore is not considered "conclusory." At the pleading stage, the Court must accept the facts alleged in the Complaint as true, meaning Plaintiff is entitled to a reasonable inference that his number is used for residential purposes.

Accordingly, Defendants' seventh objection is **OVERRULED**.

*8. State Law Claims [Objection 8]*

Defendants request that this Court resolve their 12(b)(6) challenges to Plaintiff's state law claims if the TCPA claims survive. The Court will do so since Plaintiff's federal law claims survive Defendants' Motion to Dismiss.

a. Michigan Home Solicitation Sales Act

Defendants argue that Plaintiff's MHSSA claim should be dismissed because courts have held that there is no vicarious liability under the statute. ECF No. 87, PageID.1098. But Defendants misconstrue the one case they cite to support that proposition. In *Visser v. Caribbean Cruise Line, Ltd.*, No. 1:13-CV-1029, 2020 WL 415847 (W.D. Mich. Jan. 27, 2020), the plaintiffs attempted to sue an officer of the corporate defendants for calls made on the corporations' behalf. *Id.* at *8. That court held that the plaintiff failed to show that the employee was personally involved in the relevant communications. *Id.* at *8. That holding has no bearing on how liability attaches to a *corporate* defendant. Indeed, that same court denied the corporate defendant's motion to dismiss even though the plaintiffs alleged that the defendant "*or its agent* called their cellular telephones." *Id.* at *12. The court further stated that "[t]here are many different scenarios in which one or more of these defendants might be directly or vicariously liable based on their respective roles. Plaintiffs are not obligated to allege only one theory of liability in the complaint." *Id.* at *13.

Further, several courts in this district have held that plaintiffs can recover under the MHSSA under theories of vicarious liability. *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *11 (E.D. Mich. Dec. 1, 2025) ("Dobronski may recover under the MHSSA for violations of the Act that are properly attributable to Defendants under the federal common-law agency principles discussed in *Dish Network*."), *report and recommendation adopted*, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025); *Dobronski v. Fam. First Life*, LLC, No. 22-CV-12039, 2024 WL 1342668, at *15 (E.D. Mich. Mar. 29, 2024). Thus, Defendants' proffered authority does little to support its position, one that several courts in this district have already disagreed with.

b. Florida Telemarketing Sales Act

Defendants argue that Plaintiff's FTSA claim fails because "a free vacation does not qualify as a consumer good or service under the FTSA." ECF No. 87, PageID.1099. But Plaintiff does not claim that Defendants are merely offering free vacation packages. Instead, Plaintiff alleged that Defendants offer free vacation packages to "compel the consumer regarding buying into a vacation time share program." ECF No. 56, ¶ 76. And the FTSA explicitly includes "timeshare estates, and any services related to such property" as "consumer goods or services." Fla. Stat. § 501.059(c). Although the calls begin with an offer for a free vacation, such communications are nothing more than "advertising the commercial availability or quality of any property, goods, or services." *See In re Rules*

*& Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14097 (2003).[3] Thus, Plaintiff has sufficiently stated a claim under the FTSA.

c. Michigan Consumer Protection Act

Defendants finally argue that Plaintiff fails to plausibly allege an MCPA violation because he failed to meet the particularity requirements of Federal Rule of Civil Procedure 9(b). Under this rule, Plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)). "At a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson*, 447 F.3d at 877 (cleaned up).

Despite Plaintiff's quite detailed Complaint, the Court agrees with Defendants that Plaintiff fails to meet all the elements necessary to

---

[3] Although this issue has not been squarely resolved under Florida law, Florida courts have looked to federal regulations interpreting its federal counterpart, the TCPA, for guidance. *See TSA Stores, Inc. v. Dep't of Agric. & Consumer Servs.*, 957 So. 2d 25, 29 (Fla. Dist. Ct. App. 2007). Thus, when examining Plaintiff's FTSA claim, the Court adopts the FCC's interpretation of the TCPA, which states that "[o]ffers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute 'advertising the commercial availability or quality of any property, goods, or services.'" 18 FCC Rcd. at 14097 (quoting 47 U.S.C. § 227(a)(4)).

support his MCPA claim. Plaintiff outlines the time, place, and content of each of the calls. ECF No. 56 ¶¶ 81–227. He provided names of the individual callers when available. *See, e.g.*, *id.*, ¶¶ 83 (identifying "Jennifer"), 93 (identifying "Mary"), 116 (identifying "Sarah"). He also provided information on the associated corporation when available. *See, e.g.*, *id.* ¶¶ 120 (implicating "Holidays Network"), 125 (implicating "Holidays Network"), 133 (implicating "Ascendant Holiday"), 145 (implicating "Ascendant Holidays"), 147 (implicating "HolidaysLounge"), 162 (implicating "Holidays Lounge"). He identified the fraudulent scheme as the Defendants working in concert to deceive consumers into purchasing timeshares. But the Court is not convinced that Plaintiff has sufficiently alleged any injury cognizable under the MCPA resulting from the fraudulent scheme.

Section 445.911(2) of the Michigan Compiled Laws allows a person "who *suffers loss* as a result of a violation" to bring an action. § 445.911(2) (emphasis added). Although Plaintiff alleged that Defendants have engaged in several unfair, unconscionable, or deceptive trade practices, it is not entirely clear how Plaintiff was injured. Plaintiff's other claims stem from him being forced to deal with an influx of unwanted calls. *See* ECF No. 56, ¶ 61. But Plaintiff does not allege that he ever wanted a vacation package. It appears that Plaintiff flew to Orlando simply to demand that Defendants stop calling him. *See id.*, ¶ 129. Since Plaintiff's Complaint is devoid of any allegations indicating his desire to receive a

free vacation package, the Court agrees with Defendants that he has not sufficiently alleged his MCPA claim.

Accordingly, the Court **OVERRULES** Defendants' eighth objection as to Plaintiff's MHSSA and FTSA claims but **SUSTAINS** the objection as to Plaintiff's MCPA claim.

### B. Plaintiff's Objections

#### *1. Dismissal of Count XI [Objection 1]*

Plaintiff argues that the Report and Recommendation erred by dismissing Count XI because 47 C.F.R. § 64.1601(e) does not provide a private right of action. The Court agrees. Although several courts in this district have held that there is no private right of action under § 64.1601(e), including this Court previously, *Dobronski v. SunPath Ltd.*, No. 2:19-CV-13094-TGB-EAS, 2021 WL 963933 (E.D. Mich. Mar. 15, 2021), the Court has carefully considered Judge Murphy's analysis in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025) and Judge Parker's analysis in *CHW Group* and finds them persuasive on this issue. Judge Murphy highlighted that many of the district courts that ruled in favor of Defendants' position cite *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016). *Selectquote Ins.*, 773 F. Supp. 3d at 377. That case held that § 64.1601(e) was promulgated under § 227(d), which does not provide a

private right of action. *Id.* (citing *Travel Options*, 2016 WL 4592373 at *3.

Judge Murphy and Judge Parker both highlight that § 227(d) could not have been the statutory authority for § 64.1601(e) because § 227(d) only applies to fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems, but § 64.1601(e) applies to *all telemarketing calls*. *Selectquote Ins.*, 773 F. Supp. 3d at 378; *CHW Grp.*, 2025 WL 2426370 at *8. Instead, § 227(c), which does provide a private right of action for violations of FCC regulations promulgated under that statutory provision, *see* § 227(c)(5), is the most likely statutory basis.

The TCPA is codified solely in 47 U.S.C. § 227. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394. As such, one of the Act's subsections must provide the basis for the FCC's authority to promulgate a regulatory provision for entities engaged in telemarketing. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). As Judges Murphy and Parker recognize, subsections (b) and (d) cannot be the source of that authority because those statutory provisions focus on a narrower range of technologies. *See Selectquote Ins.*, 773 F. Supp. 3d at 376; *CHW Grp.*, 2025 WL 2426370 at *8. Additionally, subsections (e) and (i) cannot be the source of that authority because Congress enacted them after the FCC promulgated § 64.1601(e). *See*

*Selectquote Ins.*, 773 F. Supp. 3d at 376; *CHW Grp.*, 2025 WL 2426370 at *8. That leaves subsection (c) as the only operative statutory provision that can grant the FCC the authority to prescribe a regulation such as § 64.1601(e). And as acknowledged by Judge Murphy, § 64.1601(e)'s requirements are consistent with § 227(c)'s focus on protecting "residential telephone subscribers' privacy rights." § 227(c)(1). "Intuitively, a caller ID requirement seems to use a telephone network technology to help protect privacy rights." *Selectquote Ins.*, 773 F. Supp. 3d at 377.

Even Judge Levy, who formerly adopted the opposing view, later agreed with Judge Murphy's reasoning. *See Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026). With no other statutory provision capable of providing the FCC with the authority to promulgate this regulation, *see CHW Group*, 2025 WL 2426370 and *Selectquote Insurance*, 773 F. Supp. 3d at 376–77, the Court holds that Plaintiff does have a private right of action under § 64.1601(e).

Accordingly, the Court **SUSTAINS** Plaintiff's first objection.

*2. Group Pleading [Objection 2]*

The Court has already addressed the Report and Recommendation's conclusion as to group pleading by holding that the corporate Defendants have received proper notice of the claims against them. Accordingly, the Court **SUSTAINS** Plaintiff's second objection.

*3. Dismissal of Count III [Objection 3]*

Plaintiff argues that the Report and Recommendation erred in dismissing Count III. ECF No. 85, PageID.1071. Judge Patti dismissed this count because Plaintiff sought relief for unanswered calls even though his Complaint alleges that he answered them. ECF No. 84, PageID.1053–54. Plaintiff argues that the Complaint's use of "answered" does not equal "a dispositive admission that the calls were not 'unanswered,'" and that Plaintiff should have been granted leave to amend. ECF No. 85, PageID.1071–72. The Court is not convinced that leave to amend is warranted. Plaintiff plainly stated that he answered the phone. ECF No. 56, ¶¶ 172, 219. In fact, he explicitly claimed that he "answered the call after the first ring, and was immediately hung up upon." ECF No. 56, ¶ 172. The Court sees no reason to accept Plaintiff's argument that the call was unanswered after such an explicit admission. Since he admitted to answering his phone, he is not entitled to relief under 21 C.F.R. § 64.1200(a)(6).[4]

While refusing to give up on his claim that Calls 14 and 21 were unanswered, Plaintiff argues that his allegations closely relate to 47 C.F.R. § 64.1200(a)(7), which relates to answered calls. ECF No. 85, PageID.1072. This argument makes it all the more likely that Plaintiff

[4] The title of Count III references 21 C.F.R. § 64.1200(a)(8), but the body of this count references (a)(6) and relates to prematurely disconnecting an unanswered telemarketing call. The Court will assume Plaintiff meant to reference (a)(6) in the title of Count III.

knows that he answered those calls. Although the Court must view the facts in the light most favorable to the Plaintiff, the Plaintiff cannot outrun his own words. *Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ("In reviewing a motion to dismiss, we . . . draw all *reasonable* inferences in favor of the plaintiff.") (emphasis added). It would be unreasonable to assume that Plaintiff did not answer Calls 14 and 21, and the Court does not find it necessary to allow Plaintiff to amend his Complaint to fix this error.

Judge Patti rightly noted that "Plaintiff is a prolific and experienced litigator." ECF No. 84, PageID.1055; *see Dobronski v. 1-800-LAW-FIRM, PLLC*, No. 2:24-CV-12512, 2025 WL 1386024, at *10 (E.D. Mich. Apr. 17, 2025) ("It is true that Dobronski is a prolific litigator in this district, filing several cases claiming violations of the TCPA and state law."), *report and recommendation adopted*, No. 2:24-CV-12512, 2025 WL 1384737 (E.D. Mich. May 13, 2025). So the Court is not convinced why it must "permit continued amendments that might have been avoided with a closer proofread." ECF No. 84, PageID.1055.

Allowing an amendment is within the discretion of the trial court. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). Plaintiff's reliance on *Brown v. Matauszak*, 415 F. App'x 608 (6th Cir. 2011) is unavailing. There, a district court dismissed a pro se (and non-legally trained) litigant's complaint with prejudice without granting any leave to amend. *Id.* at 614. Here, Plaintiff had the opportunity to

make the proper adjustments and failed to do so. The Court sees no reason why it should decline Judge Patti's recommendation.

Accordingly, the Court **OVERRULES** Plaintiff's third objection.

*4. Dismissal of Defendant Bravo [Objection 4]*

Plaintiff argues that the Report and Recommendation erred by dismissing all claims against Defendant Bravo. The Court disagrees. Plaintiff's Complaint refers to Defendant Bravo in two sections: Concert of Action and Call 20. ECF No. 56, ¶¶ 64–65, 215. Those two sections alone do not sufficiently state that Defendant Bravo was personally liable for the conduct alleged in the Complaint.

"Corporate actors can be individually liable for violating the TCPA 'where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) (quoting *Van Sweden Jewelers, Inc., v. 101 VT, Inc.*, No. 1:10–cv–253, 2012 WL 4074620 (W.D. Mich. 2012) (cleaned up). Plaintiff does not provide any allegations of Defendant Bravo's personal involvement. Instead, Plaintiff's Complaint contains a conclusory allegation that Defendant Bravo authorized the corporate Defendants' conduct, ECF No. 56, ¶ 65, and that he is the boss of one of the callers Plaintiff spoke with, *id.*, ¶ 215. Even considering Plaintiff's specific allegations related to the corporate Defendants, his Complaint fails to explain Defendant Bravo's personal involvement.

Accordingly, the Court **OVERRULES** Plaintiff's fourth objection.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** Judge Patti's Report and Recommendation (ECF No. 84) and **GRANTS IN PART AND DENIES IN PART DEFENDANTS' MOTION TO DISMISS** (ECF No. 66). Plaintiff's claims against Defendant Bravo, claims related to Calls 13 and 14, and Count XIV are **DISMISSED WITHOUT PREJUDICE** (ECF No. 56). Count III is **DISMISSED WITH PREJUDICE**. The Court **DENIES AS MOOT** Plaintiff's Motion for Leave to File Out of Time Response to Defendants' Objections.

**SO ORDERED.**

Dated: September 30, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE